# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

CHARLES EDWARD GARY, #1002003,

        Petitioner,

v.

                                           ACTION NO.  2:16cv283

HAROLD W. CLARKE,
Director Department of Corrections of Virginia,

        Respondent.

## UNITED STATES MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

        This matter is before the Court on Charles Edward Gary's ("Gary") petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, ECF No. 1, and the respondent's motion to dismiss, ECF No. 15. This matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Local Civil Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia. For the following reasons, the Court RECOMMENDS that respondent's motion to dismiss, ECF No. 15, be GRANTED, and the petition for a writ of habeas corpus, ECF No. 1, be DENIED and DISMISSED WITH PREJUDICE.

## I.      STATEMENT OF THE CASE

### A.    Procedural Background

        Gary is in state custody pursuant to a final judgment entered in the Circuit Court for the City of Danville ("trial court") on November 13, 2014. *Commonwealth v. Gary*, CR14-0824

through -0825, CR14-1037 through -1038 (Va. Cir. Ct. Nov. 13, 2014), ECF No. 17-1. Following a bench trial, the trial court convicted Gary of shoplifting, eluding police, second offense driving under the influence, and driving on a suspended license. ECF No. 17-2. Gary was sentenced to serve 11 years and 3 months in prison, with 7 years, 2 months, and 20 days suspended. ECF No. 17-1. Gary appealed his conviction and sentence to the Court of Appeals of Virginia, which initially denied the appeal on August 24, 2015, *Gary v. Commonwealth*, Record No. 1725-14-3 (Va. Ct. App. Aug. 24, 2015), ECF No. 17-3, and then a three-judge panel denied the appeal on October 26, 2015, ECF No. 17-4. The Supreme Court of Virginia refused Gary's appeal on March 8, 2016, and denied his petition for rehearing on May 13, 2016. *Gary v. Commonwealth*, Record No. 151668 (Va.).

On September 8, 2015, Gary filed a petition for a writ of habeas corpus in the Supreme Court of Virginia alleging: (I) trial counsel refused to file a continuance to prepare for trial;[1] (II) trial counsel failed to contact, interview, or subpoena alibi witnesses; (III) trial counsel colluded with the prosecutor; and (IV) the trial judge was not impartial and disinterested. *Gary v. Clarke*, Record No. 151365 (Va. Sept. 8, 2015) ("State Pet."). The court dismissed the ineffective assistance of counsel claims, claims I through III, after finding that they did not meet the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Gary v. Clarke*, Record No. 151365 (Va. Apr. 18, 2016), ECF No. 17-5 ("State Habeas Op."). The court found claim IV was barred by the rule established in *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974). *Id.*

---

[1] Although Gary labelled his claim "defense attorney refusal to file for continuance to prepare for trial," the claim centers around Gary's argument that his counsel should have filed a motion for change of venue to allow Gary to be tried by an impartial jury. *Gary v. Clarke*, Record No. 151365 (Va. Sept. 8, 2015).

Gary then filed a federal petition for a writ of habeas corpus on June 10, 2016, alleging:

1. Supreme Court of Virginia erred in its denial of Gary'[s] 'request to file a traverse in return;'

2. defense attorney failed to file for continuance to prepare for trial;

3. defense counsel failed to contact, interview, []or subpoena alibi witnesses;

4. collusion between the defense attorney and prosecutor; and

5. judge must be both impartial and disinterested.

ECF No. 1 at 13–20 ("Pet."). On November 16, 2016, respondent timely filed a Rule 5 answer and motion to dismiss the petition. ECF Nos. 15–17.

On November 23, 2016, Gary filed a "Motion to Grant Petitioner's Writ of Habeas Corpus." ECF No. 21. He asserts that respondent failed to note an appearance and timely file an answer to the petition as required by the order entered October 20, 2016. *Id.* The assertion is incorrect, and the Court recommends that this motion be DENIED.[2]

Gary filed a reply to respondent's motion to dismiss on December 7, 2016. ECF No. 23.[3] Accordingly, this matter is ripe for review.

---

[2] Counsel for respondent noted an appearance on October 21, 2016, ECF No. 12, and timely filed an answer in accordance with the October 20, 2016 order. ECF Nos. 10, 15–17.

[3] Gary has attached several documents to his reply brief filed in this Court. ECF No. 23 at 6–18. These documents include: (1) a letter to the Clerk of the Supreme Court of Virginia, dated November 20, 2015, requesting permission to file a ten-page brief in opposition to the motion to dismiss his state petition, ECF No. 23 at 6; (2) a letter to the justices of the Supreme Court of Virginia, dated November 20, 2015, requesting permission to file a "traverse in return opposing the attorney general's motion to dismiss," stating, "Petitioner finds that in the motion to dismiss respondents fact[s] are in serious dispute," ECF No. 23 at 7; (3) a ten-page brief in opposition to the motion to dismiss with certificate of service, signed November 20, 2015, ECF No. 23 at 8–18; and (4) the Supreme Court of Virginia's filing, dated December 18, 2015, denying Gary's "request to file a traverse," ECF No. 23 at 19.

## B.    Exhaustion of Claims in State Court

Section 2254 petitions challenge a state's custody of a prisoner on the theory that his custody violates the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2254(a). However, before the federal court may reach the merits of a petition, all grounds must be exhausted. 28 U.S.C. § 2254(b); *see also Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). Exhaustion requires the petitioner to present the same "essential legal theories and factual allegations advanced in federal court" first to the highest state court. *Pruett v. Thompson*, 771 F. Supp. 1428, 1436 (E.D. Va. 1991). This requirement may be satisfied through direct appeal or post-conviction proceedings. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). Gary properly exhausted his federal habeas claims by presenting these claims in his state habeas petition to the Supreme Court of Virginia.

## II.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

## A.    Facts of the Case

According to the Court of Appeals of Virginia, the evidence presented at Gary's trial, when viewed in the light most favorable to the Commonwealth, established the following:

> On November 17, 2013, Sasha Dalton was employed as a loss prevention manager at a Sears department store. At approximately 5:30 p.m., she saw [Gary] through her video camera monitor. Dalton recognized [Gary] because she had seen him, in person, on three or four prior occasions.
>
> Dalton watched [Gary] as he walked around the store and selected four flannel shirts and four Levi denim shirts. [Gary] wrapped up the shirts inside one shirt. Then, he walked around the store by "hugging walls, hugging fixtures, [and] avoiding contact with other customers, putting the items down at various points, picking them back up, putting them back down, picking it [sic] back up, sneaking his way out the door." Dalton followed [Gary] outside of the store. She was within twelve feet of him and identified him as the person who took the shirts. She saw [Gary] carrying the shirts in the parking lot. Dalton told him to stop; instead, he ran to his car and left the scene. After doing an inventory check, Dalton

determined that four denim shirts and four flannel shirts were missing from the store. The value of the shirts was $263.96.

. . . .

On November 18, 2013, at approximately 2:30 a.m., Corporal Todd Hawkins saw a silver Mazda station wagon with a tag number that was associated with [Gary]. Corporal Hawkins turned his vehicle around to follow [Gary]. While stopped at an intersection, Corporal Hawkins' headlights illuminated the interior of [Gary's] vehicle. Corporal Hawkins was able to see the driver, whom he "immediately" recognized as [Gary].

[Gary] turned left, and Corporal Hawkins followed and activated his emergency lights. [Gary] did not stop, so Corporal Hawkins activated his emergency siren. [Gary's] speed increased to approximately sixty miles per hour. Due to the high speed, Corporal Hawkins stopped his pursuit and continued in the general direction that [Gary] went. Corporal Hawkins heard a crash and subsequently discovered the silver Mazda, which had struck a telephone pole. The airbags in the Mazda had been deployed, but there was no driver.

A few minutes after the crash, Officer A.M. Kenyi saw [Gary] run across a street that was approximately one-fourth of a mile from the crash. Officer Kenyi apprehended [Gary] and noticed that he "had an odor about his person similar to that of a [sic] airbag that had deployed." Officer Kenyi also noticed that [Gary's] eyes were watery and bloodshot and he had a strong odor of alcohol coming from his person. [Gary] complained of chest pain and was transported to the hospital. Corporal Hawkins went to the hospital and identified [Gary].

ECF No. 17-3 at 1–4.

## B.    Standards of Review

### 1.    Deference to State Court Decisions

Under the Antiterrorism and Effective Death Penaly Act's ("AEDPA's") deferential standard, the Court cannot grant relief unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). A

state court decision is "contrary to" clearly established federal law when a state court arrives at a conclusion opposite that of the Supreme Court on a question of law or "if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). A state court decision constitutes an "unreasonable application" of federal law when the court identifies the correct governing legal principle from the decisions of the Supreme Court, but unreasonably applies that principle to the facts of the case. *Id.* at 413. "For a state court's factual determination to be unreasonable under [section] 2254(d)(2), it must be more than merely incorrect or erroneous. It must be sufficiently against the weight of the evidence that it is objectively unreasonable." *Winston v. Kelly*, 592 F.3d 535, 554 (4th Cir. 2010) (citation omitted). Ultimately, "state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." *Williams*, 529 U.S. at 386–89. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Morva v. Zook*, 821 F.3d 517, 524 (4th Cir. 2016) (citing *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

2.      **Ineffective Assistance of Counsel**

To review ineffective assistance of counsel claims, the Court must apply "a doubly deferential standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, __ U.S. __, 134 S. Ct. 10, 13 (2013) (quotation omitted). The applicable standard set forth in *Strickland* requires petitioner to show that his defense counsel provided assistance that (1) fell below an objective standard of reasonableness and (2) prejudiced

6

petitioner as a result. *Strickland*, 446 U.S. at 688, 692, 700. To establish that counsel's performance fell below an objective standard of reasonableness, petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. In doing so, petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To establish prejudice, petitioner must demonstrate that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. This requires petitioner to establish "probability sufficient to undermine confidence in the outcome," rather than a mere showing that "the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693–94.

## C.    Analysis

For the reasons stated below, the Court concludes that Gary's petition should be DISMISSED.

### 1.    Gary Does Not Allege a Violation of a Federal Law in Claim 1, Where He Alleges that the Supreme Court of Virginia Erred in Denying His Motion and in Failing to Hold an Evidentiary Hearing.

In his first claim, Gary asserts the Supreme Court of Virginia erred when it denied his "Traverse" opposing the Attorney General's motion to dismiss Gary's state habeas corpus petition, and in "not allowing Gary to present rebuttal testimony." Pet. 13. Gary's counsel signed a declaration that was filed as an exhibit to respondent's motion to dismiss Gary's state habeas corpus petition. Martin Decl., ECF No. 17-6. Gary asserts that he submitted a "Traverse in Return Opposing the Attorney General's Motion to Dismiss, and the Declaration of James C. Martin," on November 30, 2015. *Id.* On December 18, 2015, the Supreme Court of Virginia

denied Gary's request to file a traverse.  *Gary v. Clarke*, Record No. 151365 (Va. Dec. 18, 2015). Gary alleges his due process rights were violated when the Supreme Court of Virginia relied on the declaration of his trial counsel to deny his habeas petition without allowing Gary to present evidence to rebut the declaration, either through his traverse or his testimony.  Pet. 13.

The Fourth Circuit has held that a "state prisoner has no federal constitutional right to post-conviction proceedings in state court;" therefore, "a petitioner is not entitled to federal habeas relief" based on an "error in state post-conviction proceedings."  *Lawrence v. Branker*, 517 F.3d 700, 717 (4th Cir. 2008); *see also Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988) (holding "claims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal *habeas corpus* relief").  Accordingly, Gary's claim 1, which only alleges errors related to his state post-conviction proceedings, should be DISMISSED.

> **2.      The Supreme Court of Virginia's Decision Denying Gary's Ineffective Assistance of Counsel Claims (Federal Claims 2 through 4) Is Factually Reasonable and Not Contrary to Controlling Federal Law.**

In claims 2 through 4, Gary alleges he was denied effective assistance of counsel.  The Supreme Court of Virginia's decision dismissing these claims did not involve an unreasonable application of federal law or rest upon an unreasonable factual determination.  Therefore, claims 2 through 4 should be DISMISSED.

> **a.      Claim 2 – Alleging Counsel was Ineffective due to his Failure to File a Motion for Change of Venue**

Claim 2 is titled, "Defense Attorney Failed to File for Continuance to Prepare for Trial;" however, in the paragraphs below the title, Gary focuses on counsel's failure to file a motion for change of venue so that Gary could be tried before an impartial jury.  Pet. 14.  Gary asserts that counsel refused to file a motion for change of venue, which Gary felt was necessary due to

publicity surrounding Gary's arrest and his pending civil action against several elected officials. *Id.* Gary asserts his arrest was broadcast on local television and covered in the local paper, and he had a pending civil action against the mayor and sheriff of Danville. *Id.* Gary argues "[i]t would have been impossible for any registered juror to not have read []or viewed [] Gary's arrest," "every possible juror would have formed a negative opinion prior to trial," and "it would have been impossible to find an [i]mpartial jury in the City of Danville." *Id.* Due to counsel's failure to file the motion for change of venue, Gary asserts his defense was prejudiced and he was denied his right to a jury trial. *Id.* Gary further argues that "[h]ad [counsel] filed the Motion the outcome of Gary's Trial would have been different." *Id.*

In his declaration, Gary's counsel represented that he did not file a motion for change of venue "because in [his] professional opinion it would have been frivolous and certainly would have been denied," and because, on the same day that Gary asked for the motion for change of venue, he also stated that he wanted to go to trial "as soon as possible." Martin Decl. ¶ 7, ECF No. 17-6. Gary denies that he told counsel he wanted to proceed with trial as quickly as possible. ECF No. 23 at 12.

The Supreme Court of Virginia found that Gary's claim failed to satisfy the performance or prejudice prongs of *Strickland*. State Habeas Op. 1. The court noted that the record demonstrated that counsel and Gary "discussed the possibility of filing a motion for a change of venue and counsel determined such a motion would have been frivolous and would have been denied." State Habeas Op. 2. The Court concluded that, "[Gary] has not demonstrated that the alleged pretrial publicity or his civil actions against elected officials resulted in such pervasive prejudice against him that counsel's assessment of the merits of a motion for a change of venue

was unreasonable and that had counsel filed such a motion, it would have been granted." *Id.*

Gary has failed to show that the Supreme Court of Virginia's application of *Strickland* to this claim was not reasonable. Gary has not convinced the Court that trial counsel would have been successful in having Gary's trial moved to a different venue even though Gary's arrest was broadcast and covered in the local paper, and he had a pending civil action against several elected officials. In Virginia, it is presumed that a defendant can receive a fair trial in the jurisdiction where the offense occurred. *Stockton v. Commonwealth*, 314 S.E.2d 371, 379–80 (Va. 1984). The existence of "extensive publicity or general knowledge of a crime or of the accused" does not justify a change of venue. *Buchanan v. Commonwealth*, 384 S.E.2d 757, 767–68 (1989). Moreover, even though a potential juror has knowledge of the case, and may have formed an opinion, the juror can still sit on the jury so long as he or she can set that opinion aside. *Thomas v. Commonwealth*, 559 S.E.2d 652, 660 (Va. 2002) (citing *Irvin v. Dowd*, 336 U.S. 717, 722–23 (1961)).

In light of Virginia precedent regarding change of venue, the Supreme Court of Virginia did not unreasonably apply *Strickland* when concluding Gary's counsel made a reasonable strategic choice not to move for a change of venue. To the extent Gary is raising an ineffective assistance of counsel claim due to counsel's failure to file a motion for continuance to give counsel time to file a motion for change of venue, his claim should fail for the same reasons. Accordingly, claim 2 should be DISMISSED.

b.    Claim 3 – Alleging Counsel was Ineffective due to his Failure to Contact, Interview, and Subpoena Witnesses

Gary next asserts his counsel was ineffective for failing to interview and subpoena the owners of the vehicle Gary crashed, as well as the insurance adjuster who arranged for payment due to damages to the vehicle.    Pet. 15–18.[4]    The Supreme Court of Virginia held Gary failed to demonstrate that counsel's performance, in failing to interview or subpoena these potential witnesses, was deficient or that this failure prejudiced Gary.    State Habeas Op. 2–4.

Gary first asserts counsel was ineffective for failing to interview and subpoena C.J. Jones ("Mr. Jones"), one of the owners of the vehicle Gary crashed.    Pet. 15.    Gary states that Mr. Jones did not give Gary permission to drive his vehicle, and would have testified that he did not know Gary, although Gary admits, "[i]t is my understanding that Diane [Jones] has possession of the vehicle thru separation agreement."    *Id.*    Counsel indicated in the declaration filed with the Supreme Court of Virginia that he contacted Mr. Jones by telephone, that Mr. Jones said his wife had custody of the car, and that Mr. Jones had no knowledge of who was driving the car at any particular time.    Martin Decl. ¶ 14, ECF No. 17-6.    The Supreme Court of Virginia found Gary failed to demonstrate that his counsel's performance was deficient in failing to subpoena Mr. Jones, or that there was a reasonable probability that, but for counsel's failure to subpoena Mr. Jones, the result of Gary's trial would have been different.    State Habeas Op. 3.

"[C]ounsel has discretion over deciding which witnesses to call and how to examine them."    *Frazier v. Jenkins*, 770 F.3d 485, 504 (6th Cir. 2014) (citing *Gonzalez v. United States*, 553 U.S. 242, 249 (2008)).    Gary has failed to show how Mr. Jones' testimony, that he did not

_____

[4] Although Gary refers to these witnesses as "alibi witnesses," *Id.* at 15, he does not assert that any of the witnesses could have testified that he was somewhere other than the scene of the crime.

know Gary and did not give him permission to drive the vehicle, could have helped Gary's case, especially in light of Gary's statement that Diane Jones had custody of the car. Considering the lack of assistance this witness could have provided to Gary's defense, the Supreme Court of Virginia's decision that counsel's performance was not deficient, and that the decision not to call Mr. Jones as a witness did not cause Gary to suffer prejudice, was a reasonable application of *Strickland.*

Gary asserts next that counsel was ineffective for failing to interview and subpoena Diane Jones ("Ms. Jones"). Pet. 15. Gary submits that Ms. Jones was incarcerated prior to his trial, and that, if counsel had made a phone call to the correctional center, he would have determined that a subpoena for Ms. Jones was necessary. *Id.* Gary argues that Ms. Jones would have testified that she only knew Gary through Gary's fiancée; she would not have given Gary permission to drive her car; Gary was not with her on the day of the accident; Corporal Hawkins did not describe the vehicle that she owns;[5] and "[t]here was no way that Gary was driving her car at any time in the past nor the present." Pet. 15.

Gary attached a letter dated August 19, 2014, purportedly from Ms. Jones, to his habeas petition filed with the Supreme Court of Virginia. State Pet. Ex. A. In the letter, Ms. Jones states

---

[5] In relation to this claim, Gary asserts that Corporal Hawkins described a silver station wagon, but that the Jones' own a blue Mazda hatchback; therefore, he was convicted of driving the wrong vehicle. Pet. 15. Corporal Hawkins testified that he began following a silver Mazda station wagon with a license plate number that had been given to him as associated with Gary. Trial Tr. 24. He testified that he pursued the vehicle; observed Gary driving the vehicle; engaged his lights and siren; broke off the chase, but continued in the same direction, when the vehicle began traveling at an unsafe speed; heard a "loud bang;" and, encountered the vehicle that had crashed into a telephone pole. *Id.* at 24–30. A video was introduced into evidence that documented Corporal Hawkins' view as he pursued the vehicle and ended with the scene of the accident. *Id.* at 29–30. In light of the evidence presented at trial, it does not appear that a discrepancy between a blue Mazda hatchback and a silver Mazda station wagon is consequential to this ineffective assistance of counsel claim.

that Danny Radliff had driven her around the day of the incident and that she apologizes that Gary was "charged with Danny Radliff's charges." *Id.* With respect to the car accident, Ms. Jones writes that she had given her friend permission to use her car, that she went to sleep at her friend's house, that she was alone when she woke up, and that she "ha[s] no idea what happened." *Id.*

The Supreme Court of Virginia found that, in light of the evidence presented during Gary's trial, "counsel could reasonably have determined any testimony by [Ms.] Jones that she had 'legal possession' of the Mazda but no knowledge of what happened to it after it disappeared while she was asleep at a friend's house on the night of the offenses would not have been helpful." State Habeas Op. 3. Therefore, the court found Gary failed to demonstrate counsel's failure to interview and subpoena Ms. Jones was deficient, or that, but for counsel's failure, the outcome of Gary's trial would have been different. *Id.*

Gary has failed to show how Ms. Jones' testimony that, on the night of the accident, she fell asleep after giving her friend permission to use her car, she woke up alone, and she "ha[s] no idea what happened," could have aided his defense. State Pet. Ex. A. Accordingly, the Supreme Court of Virginia reasonably applied *Strickland* in determining that Gary failed to prove counsel was ineffective for failure to interview and subpoena Ms. Jones.

Gary further asserts his counsel was ineffective for failing to contact the insurance adjuster who handled the damages to the Jones' vehicle. Pet. 16. Gary states, "[i]t is Gary's understanding that the adjuster paid off the damage to the vehicle based on the fact that someone other than Gary was driving the vehicle." *Id.* The Supreme Court of Virginia noted that, "petitioner fails to proffer the identity of the insurance investigator, or to provide support for his claim that the insurance claim paperwork reported someone other than petitioner was driving the

13

car or that the insurance investigator would have been able to provide admissible testimony to that effect." State Habeas Op. 4. The court further found that, in light of the evidence presented at trial, "counsel could reasonably have determined an investigation into the outcome of the Jones' insurance claim was not warranted." *Id.* The court concluded Gary failed to establish the performance or prejudice prong of *Strickland* with respect to this claim. *Id.*

Gary has not proffered what evidence the insurance adjuster may have offered, only speculating that payment was made following the accident on the assumption that someone other than Gary was driving the car. Considering the testimony of Officer Hawkins placing Gary in the car and Officer Kenyi placing Gary near the scene of the accident complaining of chest pain and smelling like a deployed airbag, testimony by the insurance adjuster regarding payment for the damage to the vehicle appears to have little or no relevance to the charges brought against Gary. Moreover, Gary has failed to provide a proffer detailing any further testimony to be provided by the adjuster. Consequently, the Supreme Court of Virginia's decision that counsel's performance was not deficient, and that the decision not to interview or call the insurance adjuster as a witness did not cause Gary to suffer prejudice, was a reasonable application of *Strickland*.

For all of these reasons, claim 3 should be DISMISSED.

### c. Claim 4 – Alleging Counsel was Ineffective due to his Colluding with the Prosecutor

Gary asserts that the Commonwealth's Attorney and his defense counsel had been colleagues in the Commonwealth's Attorney's Office for 18 years, and that Gary's trial was the last case prosecuted by the Commonwealth's Attorney prior to his being appointed to a General District Court judgeship. Pet. 18. As a result, Gary alleges his counsel "sacrifice[d] Gary's liberty for the career aspirations of [counsel's] good friend, and colleague," when counsel colluded

with the Commonwealth's Attorney with respect to the introduction of evidence. *Id.* Gary asserts his counsel "was simply not going to allow his friend, and colleague to go to his interview for the next General District Court Judge without this conviction." *Id.* at 19.

First, Gary alleges his counsel colluded with the Commonwealth's Attorney and agreed not to allow into evidence a tape of the 911 call placed by Sasha Dalton ("Dalton"). *Id.* at 18. Gary argues that the tape of the 911 call would reveal that Dalton was on the 911 call and watching the store's video monitor until well after the suspect left the store, ending the call by stating, "he's gone he's gone." *Id.* Gary further argues Dalton could not have chased after, and come within 12 feet of, the suspect as she testified at trial. *Id.*

Second, Gary asserts his counsel allowed the Commonwealth's Attorney to "manipulate" the video played during Gary's trial to stop the video as the suspect was leaving the store. *Id.* at 19. Gary asserts that the portion of the video not introduced into evidence would have shown a Sears employee other than Dalton running after the suspect. *Id.* Gary states that, when the Commonwealth's Attorney stopped the video during the trial, Gary asked counsel to object and insist that the video continue to be played so the trial judge would see that it was not Dalton chasing after the suspect, but that counsel did not object. *Id.* Gary surmises that the 911 call and the portion of the video not placed into evidence would have shown that Dalton, "the Commonwealth's star witness," gave false testimony at trial. *Id.* 18–19.

The trial transcript reflects that, immediately after the video was played, Sasha Dalton testified as follows:

Q       Okay. Ms. Dalton, the doors that the person just exited, now, where do they lead to?

A       The parking lot downstairs, lower level.

15

| Q | Okay.  Completely outside the store . . . |
|---|---|
| A | Yes. |
| Q | . . . is that correct?   When you observed that, what did you do? |
| A | I went out at that point. |
| Q | Okay.   And were you able to see this person? |
| A | Yes. |
| Q | Did he still have the clothes in his hand? |
| A | Yes. |
| Q | Where was he? |
| A | In the parking lot going . . . |
| Q | And what was he doing? |
| A | . . . going to his car. |
| Q | Okay.   How close did you get to the person? |

[Counsel stipulated that Dalton indicated a distance of twelve feet.]

| Q | And what happened at that point when you got to where he was at? |
|---|---|
| A | When we asked . . . asked him to stop and he ran to his car and got in the car and left. |

Trial Tr. 11–12 (ellipses in original), ECF No. 17-7 at 14–15.

In dismissing Gary's claim regarding collusion between the Commonwealth and counsel,

the Supreme Court of Virginia found,

> [t]he record, including the trial transcript and the Sears video surveillance recording, demonstrates petitioner picked up folded shirts, wrapped them in a shirt taken from a hanger, and exited the store.   Petitioner fails to proffer how someone else exiting the store after him or Dalton not appearing on the video would show

Dalton lied or otherwise exonerate petitioner. In addition, the video surveillance recording that was admitted at trial does not include any footage showing the parking garage where Dalton testified she confronted petitioner. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

State Habeas Op. 5.

After reviewing the evidence, the Court does not see a conflict between Dalton's testimony and the information proffered by Gary. Gary argues that the 911 call would have shown that Dalton was watching a video monitor until the suspect left the store. Pet. 18. This is consistent with Dalton's testimony that she left the store *after* she observed the suspect leave the store. *See* Trial Tr. 11. Further, when Dalton testified about confronting Gary in the parking lot, she states, "[w]hen *we* asked [] him to stop and he ran to his car and got in the car and left." *Id.* at 12 (emphasis added). The Court can infer from this testimony that more than one store employee confronted Gary in the parking lot. As a result, Gary's claim that the video showed someone other than Dalton chasing Gary is consistent with Dalton's testimony. *See* Pet. 19, Trial Tr. 12. Assuming Gary's proffer of the information on the 911 call and the remainder of the video are accurate, the potential evidence would only support Dalton's testimony at trial.

"Numerous choices affecting conduct of the trial, including the objections to make, the witnesses to call, and the arguments to advance, depend not only upon what is permissible under the rules of evidence and procedure but also upon tactical considerations of the moment and the larger strategic plan for the trial." *Gonzalez*, 553 U.S. at 249. Gary has failed to show that counsel colluded with the Commonwealth's Attorney when he made the decision not to attempt to introduce the 911 call, and not to object to the Commonwealth's Attorney's ending the video at a particular place. Gary has further failed to show that these decisions by counsel were

17

unreasonable, or negatively affected the outcome of Gary's trial. Because the Supreme Court of Virginia's decision involved neither an unreasonable application of the *Strickland* standard nor an unreasonable factual determination, claim 4 should be DISMISSED.

### 3. Claim 5's Allegation that the Trial Judge Was Not Impartial and Disinterested is Barred by Procedural Default.

In claim 5, Gary asserts the trial judge was prejudiced against him. Pet. 19–20. Absent a showing of cause and prejudice or a fundamental miscarriage of justice, this Court may only address the merits of a petitioner's claims that were not procedurally defaulted in state court. *See Fisher v. Angelone*, 163 F.3d 835, 844 (4th Cir. 1998). A claim is procedurally defaulted when a state court refuses review of the claim based on an adequate and independent state procedural rule. *Id.*; *see also Coleman v. Thompson*, 501 U.S. 722, 729 (1991). A state procedural rule is adequate if it is "consistently applied by the state courts." *McNeill v. Polk*, 476 F.3d 206, 211 (4th Cir. 2007) (citing *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988)). A state procedural rule is independent "if it does not depend on a federal constitutional ruling." *Id.* (citing *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985)).

Gary's claim that the trial judge was prejudiced against him is procedurally defaulted. In dismissing Gary's state habeas petition, the Supreme Court of Virginia concluded that Gary's claim that "he was denied the right to an impartial judge at trial . . . [was] barred because this non-jurisdictional issue could have been raised at trial and on direct appeal and, thus, is not cognizable in a petition for a writ of habeas corpus. *Slayton v. Parrigan*, 215 Va. 27, 29, 205 S.E.2d 680, 682 (1974), *cert. denied*, 419 U.S. 1108 (1975)." State Habeas Op. 7. The application of the rule specified in *Slayton* constitutes an adequate and independent state law bar. *See Mu'Min v. Pruett*, 125 F.3d 192, 196 (4th Cir. 1997) ("We have held on numerous occasions

that the procedural default rule set forth in *Slayton* constitutes an adequate and independent state law ground for decision."). Accordingly, Gary's claim 5 is procedurally defaulted.

A petitioner may overcome procedural default and obtain federal merits review, however, if he can "demonstrate cause and prejudice for the default or demonstrate that failure to review the claims will result in a fundamental miscarriage of justice." *Edwards v. Johnson*, No. 2:10cv339, 2010 WL 5825427, at *3 (E.D. Va. Dec. 15, 2010) (citing *Coleman*, 501 U.S. at 750; *Savino v. Murray*, 82 F.3d 593, 602 (4th Cir. 1996)). Gary has neither alleged, nor shown, cause and prejudice or a fundamental miscarriage of justice to overcome the procedural default. Therefore, this Court cannot now review claims that were procedurally defaulted in the Supreme Court of Virginia, and Gary's claim 5 should be DISMISSED.

### 4. Gary is Not Entitled to an Evidentiary Hearing.

Gary requests an evidentiary hearing. ECF No. 1 at 14, 20. The Court "may grant an evidentiary hearing in a § 2254 case only where the petitioner has 'allege[d] additional facts that, if true, would entitle him to relief' and has 'establish[ed] one of the six factors set forth in *Townsend v. Sain*, 372 U.S. 293 (1963).'"[6] *Robinson v. Polk*, 438 F.3d 350, 368 (4th Cir. 2006) (quoting *Fullwood v. Lee*, 290 F.3d 663, 681 (4th Cir. 2002)). As discussed above, Gary has failed to allege additional facts that would entitle him to relief. Accordingly, Gary's request for an evidentiary hearing is DENIED.

---

[6] Those six factors are: "(1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing." *Townsend*, 372 U.S. at 313.

### III. RECOMMENDATION

For the foregoing reasons, the Court RECOMMENDS that respondent's motion to dismiss, ECF No. 15, be GRANTED, and the petition for a writ of habeas corpus, ECF No. 1, be DENIED and DISMISSED WITH PREJUDICE. The Court further recommends that Gary's motion to grant petitioner's writ of habeas corpus, ECF No. 21, be DENIED.

### IV. REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court

based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

/s/

Robert J. Krask
United States Magistrate Judge

Robert J. Krask
United States Magistrate Judge

Norfolk, Virginia
May 24 , 2017